**UNITED STATES v. ALLIED OIL CORP.**

No. 10132–10135, 10137, 10139.

United States Court of Appeals, Seventh Circuit.

July 19, 1950.

454

Otto Kerner, Jr., U. S. Atty., John P. Lulinski, and William Sylvester White, Jr., Asst. U. S. Attys., all of Chicago, Ill., for appellant.

Thomas J. Downs, Herbert M. Johnson, Michael F. Mulcahy, Henry W. Dieringer, Harry Freeman, Kernal Freeman, Milton T. Raynor, Julius L. Sherwin and Theodore R. Sherwin, all of Chicago, Ill., for appellee.

Before MAJOR, Chief Judge and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

These are consolidated appeals from the respective judgments in six causes brought originally by Chester Bowles, Administrator of the Office of Price Administration, Paul A. Porter, his successor in office, or Phillip B. Fleming, Administrator of the Office of Temporary Controls, as successor to Porter, against six different

entities to recover damages for sales, in excess of maximum prices, alleged to have been made by defendants in violation of the Emergency Price Control Act of 1942 as amended, 50 U.S.C.A.Appendix, § 901 et seq., and the regulations issued pursuant thereto. On June 6, 1947, all the suits were pending in the name of Fleming, Administrator of the Office of Temporary Controls. On that day and the ensuing four days, the District Court, upon motion of the government, ordered that the United States be substituted as plaintiff in each of the several causes. On January 9, 1950, the court, upon motion of defendants, entered, in each case, an order vacating the last mentioned order and dismissing the suit, holding (1) that the United States "is not the real party in interest and therefore cannot properly prosecute this case, the real party in interest being the Secretary of Commerce", and (2) that the Secretary of Commerce having failed to be substituted as plaintiff, in conformity with Rule 25(d), Federal Rules of Civil Procedure, 28 U.S.C.A., "the * * * cause is therefore abated". The contested issue on appeal, in the words of the government, is "whether the United States can maintain these suits * * * in its name".

By Section 205(e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 925(e), Congress created a civil liability for damages against any seller who should sell commodities at prices in excess of the maximum fixed by the Office of Price Control. Under the Act, for damages resulting, if not sought by the buyer, "the Administrator may institute * * * an action". "Any action * * * by either the buyer or the Administrator, as the case may be, may be brought in any court of competent jurisdiction." Acting under this congressional grant of authority, the administrator, from time to time thereafter, instituted and prosecuted such suits in his name as administrator, his right so to proceed, so far as we are advised, never being questioned. When price control was removed, the Congress, by saving clause in the repealing act, Title 50 U.S.C.A.Appendix, § 901, provided that "the provisions of this Act and * * * regulations, orders,

price schedules, and requirements shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense." After repeal, the President, acting in pursuance of Congressional authority, designated Phillip B. Fleming as administrator of the Office of Temporary Controls, to succeed Paul A. Porter, Administrator of Price Control, and he was, by order of the District Court, substituted as plaintiff in each of the suits at bar, which had theretofore been instituted by the administrator of Price Control in his name, as provided he might do in Sec. 205(e) of the Emergency Price Control Act. Still later, on April 23, 1947, the President, by Executive Order No. 9841, 50 U.S.C.A.Appendix, § 601 note 12 Fed.Reg. 2645, directed, (as he was authorized so to do by then existing law), that all price control functions theretofore vested in the Temporary Controls Administrator should be "transferred to the Secretary of Commerce and * * * be performed by him or, subject to his direction and control, by such officers or agencies of the Department of Commerce as the Secretary may designate", and that such transfer of functions should include "authority on the part of each officer to whom such functions are transferred * * * to *institute, maintain, or defend in his own name* civil proceedings in any court * * * relating to the matters transferred to him, including any such proceedings pending on the effective date of the transfer" of functions to him. (Emphasis supplied.) Despite this directive, no application was ever made by the Secretary of Commerce to be substituted for his predecessor as plaintiff in these actions. On June 6 to June 10, 1947, inclusive, however, as we have observed, the government moved and the court ordered that the United States be substituted as party plaintiff in each cause. Still later, upon motion of defendants, the orders last entered were vacated and the suits dismissed.

In view of the Congressional provision of authority in the administrator to prosecute actions in his name, the clause in the repealing act saving remedies and the President's authoritative transfer to the Secretary of Commerce of the remaining functions of price control, including the right to maintain actions such as these in his own name, it would seem clear that the proper party plaintiff, after the transfer mentioned, was the Secretary of Commerce; and so the District Court held, relying upon our decision in Bowles v. Wilke, 7 Cir., 175 F.2d 35, certiorari denied, 338 U.S. 861, 70 S.Ct. 104. But the government insists that, inasmuch as all such actions are in behalf and for the benefit of the United States, the latter is the real party in interest and can, therefore, always prosecute such actions as the true party in its own name, despite our ruling to the contrary in Bowles v. Wilke, 7 Cir., 175 F.2d 35.

The President, says the government, in Executive Order 9842, 50 U.S.C.A.Appendix, § 925 note, 12 F.R. 2646, effective on the same date as Order 9841, authorized the Attorney General to maintain these suits in the name of the United States. The first order was made subject to the second. By Order No. 9842, the Attorney General was authorized and directed to conduct and maintain price control enforcement litigation "in the name of the United States or otherwise as permitted by law". This provision, the government asserts, is a grant of power to the Attorney General to prosecute civil enforcement suits in the name of the United States. Obviously the President could not create new causes of action or vest a new party with a right of action lodged by act of Congress in another; that could have been done only by the Congress. It would seem clear then, that a direction by the President to conduct suits in the name of the United States, when Congress had provided that the administrator or his successor should have this right, would be beyond the Executive's power. However, we cannot attribute to the President an intent to override the acts of Congress; indeed we think it clear that he intended the contrary, *i. e.*, to direct that proceedings be in accord with congressional enactments and that he was merely directing that the Department of Justice should furnish the staff of man-

456

power, *i. e.*, legal and investigating personnel, necessary effectively to prosecute "price control enforcement litigation", in lieu of conduct of such litigation by the staff of the Office of Price Administration, which had disappeared with repeal of price control; and this, irrespective of whether the suits are criminal, all of which obviously must be brought and prosecuted in the name of the United States, or whether they are civil, to be brought and prosecuted in the manner and in the name of the party "provided by law". In other words, the President directed that the Department of Justice should prosecute all enforcement suits in such manner and in such names as Congress had prescribed. Any other conclusion would result in a determination that the Chief Executive transcended his own authority and encroached upon that of the legislative department. This we are unwilling to do; and we are sure that such was not the intent or purport of what he said. Nor was it a "whim or caprice" upon his part to transfer the function of prosecuting such suits to the Commerce Department, as the government suggests it would have been. On the contrary, this was the exercise of executive discretion, for it was not illogical, when the Office of Price Control was abolished, to transfer its activities to the Department of Commerce, for sales in excess of ceiling prices are a part of commerce. Nor does the fact, if it be a fact, that that department was not staffed with sufficient employees or legal representatives to effectuate enforcement impinge upon the propriety of this conclusion, for it is evident from Order No. 9842 that it was the President's intent that the Department of Justice should, with its investigating and legal staff, perform the necessary enforcement functions involved in prosecuting enforcement litigation. Such, we think, is the order's plain intent. And by Order No. 9841, the litigation was to be prosecuted in the name of the Secretary of Commerce.

Inasmuch, therefore, as the court was, in view of the acts of Congress, not justified in permitting anyone to prosecute these suits other than the Administrator or his successor, and inasmuch as the President had made the Secretary of Commerce the successor, no one other than that successor could be substituted as plaintiff. Hence we reach no question of abatement. Since Congress has not authorized the government to conduct civil enforcement suits in the name of the United States, the Court rightfully dismissed the suits.

The judgments are affirmed.